USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: January 10, 2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
ISAIS FLORES-MENDEZ,
:
                        Petitioner,
:
:
             -v-                                                13-cr-0031 (KBF)
:                17-cv-2768 (KBF)
UNITED STATES OF AMERICA,
:
                        Respondent.         OPINION & ORDER
:
:
------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

    Isaias Flores-Mendez, currently incarcerated at U.S.P. Hazelton, brings a petition under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. After pleading guilty on March 13, 2013 to one count of illegal reentry under 8 U.S.C. § 1326 and on January 7, 2014 to one count of conspiracy to commit sex trafficking by force under 21 U.S.C. § 1594, petitioner was sentenced on May 14, 2014 to lifetime imprisonment. Petitioner now claims that his sentence was the result of ineffective assistance of counsel. For the reasons set forth below, the petition is DENIED.

    I.    BACKGROUND

    Petitioner is a Mexican citizen who was deported from the United States twice in 2006. (Presentence Investigation Report ("PSR") ¶ 28.) He returned again in 2009, (Plea Tr. at 17:17), working as a sex trafficker and used violence, threats of violence, and other means of coercion to force women to engage in prostitution against their will, (PSR ¶ 41; 13-cr-0031, ECF No. 361, Sen. Tr. at 9:21–10:15; id. at

19:13–18).  He operated at least four brothels as well as a "door-to-door delivery service," at which men paid $30 in 15-minute intervals to have sex with women, many of whom were victims of sex trafficking and forced prostitution.  (PSR ¶ 41; Sen. Tr. at 19:21–23; id. at 20:8–13.)

Typically, petitioner and his associates lured women from Mexico to the United States by "engaging them in romantic relationships and promising a better life in New York."  (PSR ¶ 35.)  Once the women arrived in New York, they were forced to work as prostitutes "against their will under abhorrent conditions.  The victims [were] often beaten; threatened with physical harm to themselves and their family members; sexually assaulted; and verbally abused.  During a typical day, a Mexican sex trafficking victim in New York will have sexual intercourse with 20 to 30 customers."  (Id.)  Victims are often moved from brothel to brothel on a weekly basis to "provide customers with variety"; it was "not unusual for victims of New York-based traffickers to work in brothels as far away as Delaware or Massachusetts."  (Id. ¶ 37.)  Victims were provided with condoms and birth control pills; if a woman was suspected of being pregnant, her "trafficker will typically make [her] take the drug misoprostol . . . to induce miscarriage so that [she] can continue working as [a] prostitute[]."  (Id. ¶ 38.)

Petitioner was arrested on January 2, 2013.  (Id. ¶ 75.)  On March 13, 2013, he pled guilty to one count of illegal reentry after a Pimentel letter from the Government.  On January 7, 2014, he waived his right to proceed by way of indictment and pled guilty pursuant to a plea agreement to one count of conspiracy

2

to commit sex trafficking by force. (ECF No. 213, Plea Tr. at 9:12–14; 27:4.) At that proceeding, petitioner represented under oath that no person, including his attorney, had promised him what his sentence would be. (Id. at 17:7–9.) Furthermore, he said that he understood that the count of conspiracy to commit sex trafficking carries a maximum term of life imprisonment, (id. at 14:16–20), that his guidelines range was 360 months to life imprisonment, and that in any case, the Court was not bound to remain within that range, (id. at 18:4–19:16). Additionally, petitioner said he knew that by pleading guilty, he was relinquishing his right to challenge a modification of any sentence that is within or below 360 months to life imprisonment. (Id. at 19:17–23.) Specifically, when asked if he understood that "if [he pleads] guilty under this agreement with the government, the Court could sentence him to life imprisonment and [he] would have no right to appeal," petitioner said "yes." (Id. at 19:24–20:3.) On May 14, 2017, this Court sentenced him to life imprisonment.

II. LEGAL PRINCIPLES

A Court may dismiss a petition under § 2255 without directing the United States attorney to file a response or holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Gonzalez v. United States, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255); Fed. R. Governing Sec. 2255 Proceedings for the U.S.D.C. 4(b) ("If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss

3

the motion and direct the clerk to notify the moving party."). Here, the petition raises no factual dispute and can thus be resolved without a Government response and/or hearing.

To prevail on a claim of ineffective assistance of counsel, petitioner "must [first] show that counsel's representation fell below an objective standard of reasonableness," as measured against "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688 (1984). In addition, he must demonstrate that counsel's "deficient performance prejudiced the defense," id. at 687, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

As to the first prong of Strickland, attorney conduct is subject to an objective standard of reasonableness, and is accorded deference in light of the "range of legitimate decisions" that accompanies the various circumstances encountered by counsel. Id. at 688-89. As a result, reviewing courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, bearing in mind that there are countless ways to provide effective assistance in any given case and that even the best criminal defense attorneys would not defend a particular client in the same way." United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (alterations and internal quotation marks omitted) (quoting Strickland, 466 U.S. at 689).

As to the second prong of Strickland, a petitioner must show that, but for his or her attorney's deficient performance, there is a reasonable probability that the

4

result would have been different.  Strickland, 466 U.S. at 694.  More is required than a mere showing "that the errors had some conceivable effect on the outcome of the proceeding," as "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."  Id. at 693.

Under Strickland, "strategic choices made [by counsel] after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Id. 466 U.S. at 690–91.  A defendant's counsel "may properly decide to forego a Fatico hearing as a 'matter of strategy,' and [the Second Circuit] presume[s] that such a strategy is sound absent a strong showing to the contrary."  United States v. Santiago, 330 Fed. App'x 234, 238–39 (2d Cir. 2009) (quoting United States v. Lee, 818 F.2d 1052, 1056 (2d Cir. 1987)).  In any case, it may be "wise" to avoid a Fatico hearing "at which [the defendant's] prior violent conduct would have been reviewed in detail for the benefit of the district court."  Id. at 239.  "[I]n the absence of what evidence, if any, a Fatico hearing might have established, [the Court] cannot conclude that counsel's failure to request one prejudice[s] [a defendant] in any way."  United States v. Costa, 423 Fed. App'x 5, 9 (2d Cir. 2011).

III. DISCUSSION

Petitioner claims that his defense counsel "failed to render reasonably effective assistance given the totality of the circumstances."  (Mot. at 4.)

5

Essentially, petitioner: (1) claims his counsel promised him a sentence of no more than ten years; and (2) challenges the veracity of the victim letter read by the Government and referred to by the Court at sentencing.[1]

Petitioner claims that his counsel informed him that he would receive a sentence of no more than ten years. However, at his plea hearing, petitioner explicitly swore under oath that no person had made him a promise regarding a specific sentence. This fact alone is enough to demonstrate that neither his guilty plea nor his sentence were the result of unreasonable action by his counsel, who, according to petitioner's statement to the Court, did <u>not</u> promise a specific sentence. In addition, though, petitioner affirmed under oath that he understood he was pleading to a stipulating sentencing range of 350 months to life imprisonment and and that by doing so, he relinquished his right to file a direct or collateral appeal of a sentence within that range. Petitioner's life sentence is within that range; and in any case, the transcript clearly establishes that petitioner knew he could receive such a sentence. As such, petitioner cannot demonstrate ineffective assistance on either ground raised.

Separately, petitioner claims that a <u>Fatico</u> hearing would have revealed a different story. However, without evidence of what a <u>Fatico</u> hearing might have established, petitioner cannot demonstrate that his attorney's actions were deficient

---

[1] The Court notes that the motion filed by petitioner's counsel does not clearly state this claim. Nevertheless, the Court reads the petition generously for equity's sake. The claim is identical to that raised in Bonifacio Flores-Mendez's petition, which was filed by the same attorney. In fact, the claim references a <u>Fatico</u> hearing offered to Bonifacio (not Isaias). A <u>Fatico</u> hearing was never offered to Isaias, but the Court will read this as a claim that Isaias's counsel should have requested one.

or unreasonable. Simply put, the decision to request—or not request—a Fatico hearing is a strategic one; often, counsel decides against a Fatico hearing to avoid the risk of worsening his or her client's outcome. Here, counsel likely did just that, a reasonable assessment in light of the offense conduct to which defendant pled guilty.

IV. CONCLUSION

For the reasons set forth above, petitioner's § 2255 motion to vacate, set aside or correct his sentence is DENIED. The Clerk of Court is directed to terminate the petition at 17-cv-2768 ECF No. 1 and 13-cr-31 ECF No. 425 and to terminate 17-cv-2768.

SO ORDERED.

Dated: New York, New York
January 10, 2018

KATHERINE B. FORREST
United States District Judge